20-MJ-1107-DLC
20-MJ-1108-DLC

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Special Agent William R. McDermott, being duly sworn, depose and state that:

## INTRODUCTION

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since May 2003. I am currently assigned to the Southeastern Massachusetts Gang Task Force of the FBI's Boston Division. My responsibilities include the investigation of possible violations of federal law, including investigation of gang-related criminal activity, violent crime, and drug trafficking. During my career, my investigations have included the use of various surveillance techniques and the execution of various search, seizure, and arrest warrants.

## PURPOSE OF AFFIDAVIT

2. I submit this affidavit in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 2703(c)(1)(A), for information about the location of a cellular telephone ("Target Mobile Phone") bearing Sprint phone number 617-980-6512, subscribed to Brooke HATCH. It is believed to be utilized by Trevel BREWSTER[1]. The Target Mobile Phone is described in Attachment A-1 along with the information to be seized described in Attachment B-1.

3. I also submit this affidavit in support of an application for a search warrant under

---

[1] According to BREWSTER's Massachusetts Board of Probation record, BREWSTER has been the defendant on a 2019 restraining order wherein Brooke HATCH is the plaintiff. The restraining order is in effect until December 2020.

1

Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, described in Attachments B-2, to determine the location of the Target Mobile Phone described in Attachments A-1. The investigative technique described in Attachment B-2 involves the use of a Cell Site Simulator ("CSS").

4. The purpose of applying for these warrants is to precisely determine the location of the Target Mobile Phone, in order to locate BREWSTER, who is a "Person to be Arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). There is reason to believe the Target Mobile Phone is currently located within the District of Massachusetts based on previous controlled purchases of drugs from BREWSTER and an indicted co-conspirator, Timmy HUNT, conducted by a Cooperating Witness[2] ("CW-1"), which took place between February and March 2020 in Boston, and recent surveillance observations of BREWSTER within the District of Massachusetts. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Mobile Phone outside the district provided the device is within the district when the warrant is issued.

5. Because collecting the information authorized by the cell-site simulator warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1). Consistent with the

---

2  CW-1 began cooperating with law enforcement in February 2018. CW-1 has positively identified numerous individuals involved in drug trafficking, illegal firearms possession, and gang activity. CW-1 has conducted numerous consensually recorded conversations with target subjects in person and over the telephone. CW-1 has made numerous controlled purchases of drug and firearms evidence from target subjects. CW-1 has provided information regarding individuals involved in drug trafficking that has led to the arrest of those individuals and the seizure of drugs. The information provided by CW-1 has been corroborated by the controlled purchases of contraband, consensually recorded communications, and by the investigation generally. Law enforcement considers the information provided by CW-1 to be reliable. CW-1 has a lengthy criminal history including arrests for larceny-type offenses, drug distribution, and violent offenses.  CW-1 has admitted to substance abuse in the past. CW-1 has received consideration in the form of financial assistance and consideration on potential criminal charges in connection with his or her cooperation.

requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the FBI. *See* 18 U.S.C. §§ 3122(b) and 3123(b).

## PROBABLE CAUSE

6.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

7.  Since approximately February 2020, the FBI has been utilizing CW-1, and other CWs, to conduct controlled purchases of drugs and/or firearms from numerous individuals in the Greater Boston region. Each of these controlled purchases took place exclusively in the District of Massachusetts. Two of these controlled purchases were described to this Court in my Affidavit in support of a search warrant for cell site location information submitted on March 25, 2020, 20-MJ-1030-DLC. On June 23, 2020, a federal Grand Jury within the District of Massachusetts returned indictments against two of those individuals, including Trevel BREWSTER, the user of the Target Mobile Phone, charging them two counts of Distribution and Possession with Intent to Distribute Cocaine Base [21 U.S.C. § 841(a)(1)] and one count of Conspiracy to Distribute and Possess with Intent to Distribute over 28 Grams of Cocaine Base [21 U.S.C. §§ 846, 841(b)(1)(B)(iii)]. A federal warrant was issued for BREWSTER's arrest. Consequently, BREWSTER is considered a "Person to be Arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8.  In an effort to locate and arrest BREWSTER, investigators have identified BREWSTER's cellular phone number. BREWSTER has used several phones in the course of this investigation, including a phone assigned the number 857-492-7878, for which this Court

issued a search warrant for location information on March 25, 2020, 20-MJ-1030-DLC.

9. In June 2020, a Confidential Informant ("CI-1") identified the Target Mobile Phone as a new phone number utilized by Trevel BREWSTER in furtherance of his drug trafficking. Investigators monitored as CI-1 communicated with BREWSTER on the Target Mobile Phone. Investigators familiar with BREWSTER's voice from review of audio and video recordings identified the BREWSTER as the user of the Target Mobile Phone upon hearing the calls between CI-1 and BREWSTER. As noted above, the listed subscriber for the Target Mobile Phone number is a woman who obtained a restraining order against BREWSTER. Based on my training and experience, I believe the Target Mobile Phone likely belongs to or is being used by BREWSTER. Furthermore, BREWSTER has been observed on multiple occasions by CW-1, CI-1, and law enforcement in Massachusetts, and is believed to reside in Massachusetts.

10. For the reasons listed above, I believe the Target Mobile Phone is being utilized by BREWSTER in the District of Massachusetts. I also believe that the requested historical and prospective information associated with the Target Mobile Phone will greatly assist the FBI in effecting the arrest of BREWSTER. Specifically, the requested historical records will enable the FBI to identify patterns of life for BREWSTER. These patterns of life will include general areas where he frequents and his frequent contacts, both of which will assist in locating him for the purpose of effecting his arrest. Additionally, the prospective GPS "pings" and prospective Pen Register / Trap and Trace devices with cell site information will assist the FBI by providing real-time location updates for the Target Mobile Phone and information regarding what phones are in contact with the Target Mobile Phone. Both of these components will assist the FBI during the searches for BREWSTER – a Person to be Arrested.

11. If the FBI is unable to locate the Target Mobile Phone based simply on the requested historical and prospective information, I believe the authority to utilize a CSS will

4

drastically increase the chances of locating it and BREWSTER. If the FBI is able to locate the Target Mobile Phone without the use of a CSS, the device will not be utilized.

12. Lastly, as soon as BREWSTER has been located and arrested, the FBI will immediately discontinue the use of the requested prospective information and the authority to utilize a CSS on the Target Mobile Phone.

13. Based on my training and experience, and for all the reasons set forth herein, probable cause exists to believe that the location information described in Attachments B-1 and the investigative technique described in Attachments B-2 will enable the FBI to locate and arrest Trevel BREWSTER.

## APPLICABLE CELLULAR TECHNOLOGY

14. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

15. I know that mobile phone providers have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the mobile phones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the mobile phone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e., faces of the towers) to

which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

### **MANNER OF EXECUTION – CSS WARRANT**

16. To facilitate execution of the requested CSS warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Mobile Phone or receiving signals from nearby cellular devices, including the Target Mobile Phone. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Mobile Phone and thereby prompt it to send signals that include the unique identifiers of the devices. Law enforcement may monitor the signals broadcast by the Target Mobile Phone and use that information to determine the Target Mobiles Phone's location, even if they are located inside a house, apartment, or other building.

17. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Mobile Phone, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be one of the Target Mobile Phone, and law enforcement will limit collection of information from devices other than the Target Mobile Phone. To the extent that any information from a cellular device other than the Target Mobile Phone is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent

further order of the Court, other than distinguishing the Target Mobile Phone from all other cellular devices.

18.     The execution of these warrants will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510).  To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

## AUTHORIZATION REQUEST

19.     Based on the foregoing, I believe there is probable cause to believe that the Target Mobile Phone is being utilized and possessed by Trevel BREWSTER.  Because of this, I further believe there is probable cause that the location information described in Attachments B-1 and the investigative technique described in Attachments B-2 will enable the FBI to locate and arrest him.

20.     I request that the Court issue the proposed search warrants, pursuant to Title 18 United States Code, Section 2703(c) and Federal Rule of Criminal Procedure 41.  The proposed CSS warrant also will function as a pen register order under 18 U.S.C. § 3123.

21.     I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachments B-1 unobtrusively and with a minimum of interference with services, including by initiating signals to determine the location of the Target Mobile Phone on their networks, and at such intervals and times as directed by the government.  The government will compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

22.     I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order Sprint not to notify any person (including the

subscribers or customers to whom the materials relate) of the existence of this application, the warrant, or the execution of the warrant, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b).  Sprint may disclose this Order to an attorney for the purpose of receiving legal advice.  Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the investigation.  There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee, continue flight from prosecution, and/or intimidate potential witnesses.  *See* 18 U.S.C. § 2705(b).

23.	I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant authorizing the use of a CSS to delay notice until 30 days from the end of the period of authorized surveillance.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscribers or users of the Target Mobile Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to change patterns of behavior, notify confederates, and/or flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  There is reasonable necessity for the use of the technique described above, for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

24.	I further request that the Court authorize execution of the warrants at any time of day or night, owing to the potential need to locate the Target Mobile Phone outside of daytime hours.

25. I further request that the Court order that all papers in support of these applications, including the affidavit and the search warrants, be sealed until further order of the Court, except that the government may produce them in criminal discovery and provide the precise location data search warrant to Sprint. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

26. A search warrant may not be legally necessary to compel the investigative technique described in Attachments B-2. Nevertheless, I submit this warrant application out of an abundance of caution.

/s/ William McDermott DCC
William R. McDermott, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 this 23rd day of June 2020.

_____
HONORABLE DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS